# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

LULA B. ROWE, ET AL. V. CARROLL J. ROWE, ET ALS.

December 17, 1925.

Absent, Chinn, J.

1. ADVANCEMENTS—*Section 5278 of the Code of 1919—Intent of the Act.*— The intent of section 5278 of the Code of 1919 is to bring about as nearly as may be an equal division of the estate of a decedent among his children or other descendants, except so far as he may have himself intentionally distributed his estate unequally.

2. ADVANCEMENTS—*Presumption that Gift is an Advancement.*—Where the gift is substantial in amount, the law attaches the presumption to every gift by an ancestor to a descendant that it is a gift by way of advancement, and this presumption is one of law, and is based upon the supposed intention or desire of the ancestor that any inequalities in the division of his whole estate among his heirs-at-law and distributees shall be corrected as far as practicable.

3. ADVANCEMENTS—*Rebuttal of Presumption that Gift is an Advancement— Evidence—Declarations of Ancestor.*—The presumption that a gift to a descendant is an advancement may be rebutted by affirmative proof, and for the purpose of showing the real intention of the ancestor, his declarations or statements made at the time of the gift or subsequently, are competent evidence, as well as the circumstances of the ancestor and the relations existing between him and the child.

4. ADVANCEMENTS—*Services Rendered by Children—Case at Bar.*—In the instant case, a suit for partition of a decedent's estate between his second wife and her infant son and his seven adult children by his first marriage, it was established that the decedent had during his lifetime given to each of his children, by his first marriage, substantial gifts to which the law attached a presumption that each was a gift by way of advancement. It was shown that the father started life without means and that by hard work and frugality he accumulated his estate, and to a greater or less extent the adult children worked with and for him, thus aiding in the building up of his fortune.

*Held:* That these circumstances and the relations between the father and the adult children could have no bearing on the question whether the gifts were by way of advancement, as there is no implied obligation upon the part of the father to remunerate his children for serv-

. ices; besides, in the instant case, the gifts to each of the children were entirely voluntary.

5. ADVANCEMENTS—*Declarations of Ancestor—Hotchpot not for the Benefit of the Widow—Case at Bar.*—In the instant case, where the question at issue was whether gifts by a father to the children of his first marriage should be brought into hotchpot, it was proven that the father declared that his wife would get her part of his estate upon his death, which would be more than what he had given his other children, and that at her death it would go to her son.

   *Held:* That this was not sufficient to rebut the presumption that gifts to the children of his first marriage were by way of advancements.

6. ADVANCEMENTS—*Hotchpot not for the Benefit of the Widow—Purpose of the Statute.*—Advancements to children are not brought into hotchpot for the benefit of the widow; she is only entitled to share in the estate of the intestate of which he died possessed. The purpose of the statute is equality among the children, subject to her distributive share in the personalty and dower interest in the real estate for her support and maintenance.

7. ADVANCEMENTS—*Age and Dependence of Infant—Adult Children—Case at Bar.*—Where the question at issue was whether gifts by a father to his adult children were advancements, the age and dependence of an infant child, coupled with the fact that the adult children worked for and with their father in accumulating his estate, do not evidence any intention to discriminate against the infant, especially when the older children are men and women of mature years and established in life. The necessities of the infant for maintenance and education would naturally call for greater consideration from the parent.

8. ADVANCEMENTS—*Declarations of Ancestor—Unconditional and Irrevocable Gift—Case at Bar.*—In the instant case, where the question at issue was whether certain gifts by a father to his children were advancements, one son testified that "he gave it without strings tied to it" and another testified his father said "he made the gift to be relieved of taxes and wanted them to enjoy the property in his lifetime." Giving to these declarations the most liberal construction, there is nothing incompatible with the presumption that the gifts were unconditional and irrevocable.

9. ADVANCEMENTS—*Gifts Must be Irrevocable.*—The law requires that in order for a gift to be an advancement, the parent must have irrevocably parted from his title in the subject advanced.

10. PRESUMPTIONS AND BURDEN OF PROOF—*Rebuttal of a Presumption of Law—Evidence Balanced.*—A presumption of law cannot be said to be rebutted where the evidence of equally credible witnesses for and against the presumption is equally balanced. The rebutter has not carried the burden imposed upon him by law. Where the evidence

for and against the presumption are equal the presumption will prevail.

11.  ADVANCEMENTS—*Declarations of Ancestor—Ancestor's Knowledge of the Law—Case at Bar.*—In the instant case the question at issue was whether certain gifts by a father to his children were advancements. The declarations of the father about the division of his estate were conflicting. It was shown that the father had been told by an attorney that the gifts he had made his children would be treated as advancements unless he expressed a contrary desire in writing, and with this knowledge died without making any will or declarations about the gifts to his children.

  *Held:* That the real intention of the father was that his estate should be equally divided as provided by law after his adult children had brought their gifts into hotchpot.

Appeal from a decree of the Circuit Court of Northumberland county. Decree for complainants. Defendants appeal.

*Reversed and remanded.*

The opinion states the case.

*R. O. Norris, Jr.,* for the appellants.

*Asa S. Rice,* and *T. J. Downing,* for the appellees.

CHRISTIAN, J., delivered the opinion of the court.

This is a suit for partition brought by the seven adult children of H. C. Rowe against his widow, Lula B. Rowe, who was his second wife, and their infant son, Barnes Rowe, for the purpose of assigning the widow her dower, and dividing the real estate, of which H. C. Rowe died seized, among his children.

Commissioners were appointed by the court to assign the widow's dower and make partition of the balance of the real estate in kind among his children, and report the same to court. The commissioners performed their duties to the satisfaction of the adult parties and re-

turned their report, with their findings, to the court for confirmation. Whereupon Lula B. Rowe, as next friend of her infant son, Barnes Rowe, filed exceptions to the report of the commissioners and her amended and supplemental answer which she prayed might be treated as a cross-bill. The exceptions and cross-bill presented to the court the same issue, to-wit: that H. C. Rowe in his lifetime had made substantial gifts to each of his seven children by his first marriage, as advancements, and by virtue of section 5278 Virginia Code, 1919, before they could come into partition and distribution of his estate, they must bring said advancements into hotchpot.

The plaintiffs answered the cross-bill and exceptions, claiming that their respective gifts were made as absolute gifts and not as advancements. Upon issue thus joined, the court, by consent of the parties, heard the evidence *ore tenus* and decided that the gifts were not advancements, and from its decree entered pursuant to this decision, the infant by his next friend appealed.

[1, 2, 3] The intent of section 5278, *supra*, is to bring about as nearly as may be an equal division of the estate of a decedent among his children or other descendants, except so far as he may have himself intentionally distributed his estate unequally. Where the gift is substantial in amount, the law attaches the presumption to every gift by an ancestor to a descendant, that it is a gift by way of advancement, and this presumption is one of law and is based upon the supposed intention or desire of the ancestor that any inequalities in the division of his whole estate among his heirs-at-law and distributees shall be corrected as far as practicable. But this presumption may be rebutted by affirmative proof, and for the purpose of showing the real intention of the ancestor, his declara-

tions or statements made at the time of the gift, or subsequently, are competent evidence, as well as the circumstances of the ancestor and relations existing between him and the child. *McDearman* v. *Hodnett,* 83 Va. 281, 2 S. E. 643; *Payne* v. *Payne*, 128 Va. 33,. 104 S. E. 712; *Poff* v. *Poff*, 128 Va. 62, 104 S. E. 719.

The evidence shows that H. C. Rowe died in the month of _____, 1922. In 1906 he gave Ira B. ("Burke") Rowe $300.00 and in 1920 he gave him an additional $1,000.00. On the 4th day of. March, 1909, H. C. Rowe executed and delivered to each of four other children deeds conveying certain real estate to them respectively as and for homes. This was prior to his second marriage. On the 8th day of December, 1910, he conveyed to the daughter certain real estate. On August 2, 1915, he executed a deed to real estate to his son, Morris M. Rowe. Thus it is established without controversy that H. C. Rowe,. during his life, gave to each of his children substantial gifts to which the law attaches the presumption that each was a gift by way of advancement, and casts upon each donee the burden of rebutting that pre-. sumption by affirmative proof.

There is no difference between the learned counsel in reference to the law of gifts by way of advancement, so that the purpose of the appellees' evidence is to establish the real intention of H. C. Rowe in making the gifts to his seven children to be absolute gifts, and thus rebut the presumption of law that said gifts. were advancements.

In short—the question for determination is, have the appellees proven that his real intention was contrary to this presumption of law.

[4, 5, 6] They have proven that their father started life without means and that by hard work and frugality

he accumulated his estate, and to a greater or less extent they worked with and for him, thus aiding in the building up of his fortune. These circumstances and relations between their father and themselves cannot have any bearing upon this case, as there is no implied obligation upon the part of the father to remunerate his children for services; besides, the gifts to each of them was entirely voluntary. It is also proven that H. C. Rowe declared that his wife would get her part of his estate upon his death, which would be more than wha the had given his other children, and at her death it would go to her son. Advancements to children are not brought into hotchpot for the benefit of the widow; she is only entitled to share in the estate of the intestate of which he died possessed. The purpose of the statute is equality among the children, subject to her distributive share in the personalty and dower interest in the real estate for her support and maintenance. *Knight* v. *Oliver*, 12 Gratt. (53 Va.) 33.

[7] Nor does the age and dependence of the infant, coupled with the fact that they worked for and with their father in accumulating his estate, evidence any intention to discriminate against the infant, especially when the older children are men and women of mature years and established in life. The necessities of the infant for maintenance and education would naturally call for greater consideration from the parent.

The circumstances and relations of the father and children do not rebut the presumption of law that the gifts were made by way of advancements.

[8, 9] This brings us to the discussion of the declarations of H. C. Rowe. At the time of the respective gifts nothing was said, except two of the sons testified that he said "he gave it without strings tied to it" and

another testified his father said "he made the gift to be relieved of taxes and wanted them to enjoy the property in his lifetime." Giving to these declarations the most liberal construction, there is nothing incompatible with the presumption that the gifts were unconditional and irrevocable, thus answering the requirement of law that in order to be an advancement the parent must-have irrevocably parted from his title in the subject advanced.

[10] Subsequent to the gifts to his children, several witnesses testify that H. C. Rowe told them he had given all of his children homes except Burke, and he was going to give him money, and that when he died he wanted the rest of his property to be divided equally among all his children. The above declarations, while merely hearsay evidence, therefore unsatisfactory, because of the possibility of mistake or failure of memory, if standing alone, might be sufficient to establish an intention to divide his property unequally, but its effect is very much weakened if not destroyed by testimony of various witnesses that they had heard H. C. Rowe say, on different occasions, one while in his last sickness, that he had given all of his children homes but Burke who he gave money, and that he was going to give or wanted Barnes (the infant) to have the "Betts place." A presumption of law cannot be said to be rebutted where the evidence of equally credible witnesses for and against the presumption is equally balanced. The rebutter has not carried the burden imposed upon him by law. Where the evidence for and against the presumption are equal the presumption will prevail.

But the evidence of E. Hugh Smith, an attorney-at-law, and friend of H. C. Rowe, when he went to consult about making a will, establishes conclusively his real

intention that the gifts should be brought into hotch-pot. After Smith had explained to him the rights of his wife in his property, and how any property he might give his infant son would go in event of his death without issue. Smith told him in event of his death, intestate, the gifts he had made his children would be treated as advancements unless he expressed a contrary desire in writing. After some further conversation Rowe said: "Well, I don't know but that the law makes as good a will as I could make." With this knowledge of the law Rowe died without making any will or declaration about the gifts to his children.

[11] Therefore, considering the circumstances of Rowe, his relations to his children, the conflicting declarations made about the division of his estate, and his knowledge of the law in regard to advancements, it is conclusively established that his *real intention* was that his estate should be equally divided as provided by law after his adult children had brought their gifts into hotchpot.

The decree of the circuit court will be reversed and the case remanded for further proceedings in accord with this opinion.

*Reversed and remanded.*