**Salem**

CAROL ELAINE HUGHES LAMBERT (ATWOOD)

v.

W. C. LAMBERT

No. 0920-86

Decided April 5, 1988

COUNSEL

Arthur E. Smith, for appellant.

Hugh P. Cline, for appellee.

OPINION

**BENTON, J.** — Carol Elaine Hughes Lambert, now Atwood, appeals from a circuit court's adjudication of the parties' rights and interests in property incident to their divorce. She contends that the circuit court erred because it (1) classified three business entities as the separate property of W.C. Lambert (the "husband"), (2) ordered her to convey to the husband her interest in the marital home, (3) declined to exercise jurisdiction to consider jointly owned real property in Florida, and (4) granted a monetary award in an amount so inequitable as to constitute an abuse of discretion. For the reasons which follow, we reverse, in part, the decree rendered by the trial court and remand the case for further consideration.

The husband filed a bill of complaint seeking a divorce from the wife after approximately thirty-two years of marriage. In 1985, the court granted the husband a divorce *a vinculo matrimonii* on the ground of desertion. The matter was continued on the court's docket for further proceedings concerning the parties' property pursuant to Code § 20-107.3.

After taking evidence relevant to the parties' property interests, the court issued a memorandum opinion setting forth its findings and a decree. The decree classified as marital property a parcel of land which the wife inherited and which was titled in both parties' names ten years before the divorce proceedings. The decree further provided that the husband was to convey his interest in that property to the wife. It also directed the wife to convey her interest in the marital home and furnishings to the husband. Although

the decree contained no reference to the parties' Florida property, the memorandum opinion stated that the jointly titled condominium in Florida and its furnishings "should be sold and the proceeds divided equally between the parties after payment of the mortgage and costs." The husband's interests in three businesses were determined to be his separate property and were not included in the marital estate, which was valued by the court at $415,028.34. The husband was ordered to pay the wife $75,000 within six months from the entry of the decree.

## I.

The wife first contends that the trial court erred in classifying the businesses as the separate property of the husband. She asserts that (1) the businesses are marital property because the husband's interests were created during the marriage, and (2) even if the properties at their inception were separate, any increase in their value due to the active efforts of the husband must be deemed marital property.

The evidence established that in 1954, three years after the parties were married, the husband, a pharmacist, and his father, C. C. Lambert, organized a partnership to operate a business known as Lambert Pharmacy. The husband testified that his interest in the partnership was a gift from his father and that the profits from the pharmacy were allocated equally between him and his father. The husband operated the retail pharmacy business and received a salary for his services. The wife occasionally helped out in the pharmacy but was never a regular employee. The nature and extent of her services are not clear from the record. The father did not participate in the ongoing operation or management of the pharmacy.

About a year after the partnership was formed, the husband began to acquire various assets through the partnership. Using funds obtained through an interest-free loan from the father, the partnership purchased the building in which the pharmacy was a tenant and titled the building in the names of the father and the husband. Additionally, in 1961, the partnership entered into a venture with Robert Hancock to form a corporation, Hancock-Lambert Pharmacy, Inc., for the purpose of operating a pharmacy in another town. Hancock received fifty percent of the stock. Us-

ing funds generated by Lambert Pharmacy, the husband and his father each acquired twenty-five percent of the stock. The husband became president and a director of the corporation and advised Hancock, a newly licensed pharmacist, on various aspects of operating a pharmacy.

In 1976, the father gave to the husband the father's entire interest in the Lambert Pharmacy partnership. The father also conveyed to him all of his interest in the building in which the pharmacy was located. The husband then gave to the wife a ten percent interest in the partnership. In the following year, the partnership was converted to a corporation, Lambert Pharmacy, Inc., with the wife controlling ten percent of the outstanding stock and the husband controlling ninety percent.

During the marriage, the husband also formed another corporation, Dominion-Lambert Enterprises, Inc. Although the record does not reflect the date Dominion-Lambert was formed, initially its only asset was the building which was originally purchased by the Lambert Pharmacy partnership but owned solely by the husband in 1976. The record also does not reflect the date or the nature of the transaction by which Dominion-Lambert became the owner of the building. Dominion-Lambert continued to lease the building to Lambert Pharmacy until 1981, when Dominion-Lambert constructed a new building with funds obtained from three sources - the sale of the old building, gifts made by the father, and a bank loan. Lambert Pharmacy leased the new building from Dominion-Lambert and continued in operation until 1985, when Lambert Pharmacy, Inc., was liquidated in a corporate sales transaction with the Rite Aid Corporation.

## II.

Under our statutory scheme "[m]arital property is . . . all . . . property acquired by each party during the marriage which is not separate property." Code § 20-107.3(A)(2)(ii). Separate property is

(i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; and (iii) all property acquired during the marriage in exchange for or from

the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property.

Code § 20-107.3(A)(1). The statute creates a rebuttable presumption that property acquired during the marriage is marital property. Code § 20-107.3(A)(2); *see also Brown v. Brown*, 5 Va. App. 238, 242, 361 S.E.2d 364, 366 (1987); *Rexrode v. Rexrode*, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986). Thus, where evidence is presented that property was acquired during the marriage, the trial judge must conclude that it is marital property unless adequate evidence is produced to establish that it is separate property as defined in Code § 20-107.3(A)(1).

Applying these principles to the facts of this case, we conclude that the record does not reflect to what extent, if any, the trial court gave effect to the statutory presumption in classifying the business entities as separate property. The first business entity, Lambert Pharmacy, was originally organized during the marriage by the husband and his father as a partnership. Because the partnership was formed during the marriage, the husband's partnership interest is presumed to be marital property. Code § 20-107.3(A)(2).

On direct examination the husband denied that he contributed any of the initial capital investment in the business and testified that his father gave him an interest in the partnership. However, the partnership's balance sheet, dated as at the end of the first year of its operation, recorded the husband's "initial capital invested in the business" at $373.45 and recorded the father's "initial capital invested in the business" at $19,296.60. On cross examination, when questioned concerning the partnership's balance sheet, the husband stated that he could not recall having contributed any initial capital. The statements of partnership accounts and the entries on the books are *prima facie* correct and generally conclusive as to the partners. *Seaboard Bank v. Revere*, 209 Va. 684, 688-89, 166 S.E.2d 258, 261 (1969). The burden of proof is on the partner challenging the entry to prove it is incorrect. *Id.* The husband's inability to recall making the initial capital investment charged to him on the accounts of the partnership thirty years ago is the only evidence that we perceive to refute the presumed correct entry on the partnership's books. Although the trial

judge concluded that the husband's interest in the partnership was a gift, there is no indication that the conclusion was based upon a determination that the evidence rebutted the *prima facie* correctness of the partnership accounts. There is neither a finding that the $373.45 was a gift from the father nor a finding concerning the precise nature of the "interest" that the trial court determined to be a gift. In the absence of such findings we cannot determine whether the husband's evidence was sufficient to rebut the legislative preference for the classification of property acquired during the marriage as marital.

Significantly, there is a vast disparity between the initial capital investment of $373.45 charged to the husband on the books of the partnership and the $19,296.60 charged to his father. There is no evidence which suggests why, if the husband made no capital investment, the capital accounts were so structured. The evidence does establish, however, that at the time the partnership was established the husband and wife had very limited personal resources.

The evidence suggests that in addition to monetary consideration, the husband also may have provided further consideration for the partnership interest in the form of his services to the partnership. Although the testimony is not detailed concerning the arrangement between the husband and his father, the husband testified that he managed and operated the pharmacy. It does not appear that the father participated in the business beyond his initial capital investment. On the other hand, the record reflects that the husband devoted his full time and attention to the business. Thus, the ongoing success and growth of the business were entirely the product of the active efforts of the husband, who also served the business as a licensed pharmacist. Although the husband received a salary from Lambert Pharmacy, the record does not establish the amount of that salary in relation to his duties as pharmacist and sole manager of the enterprise and does not negate the inference that the profits, which were divided evenly between the husband and his father, were earned by the husband as additional consideration for his in kind services to the partnership.

In view of the presumption that the husband's initial partnership interest, acquired during the marriage, is marital property subject to equitable distribution, and the additional evidence that the husband may have given consideration by capital investment

as well as his services for his interest in the partnership, the mere statement by the husband that his interest in the partnership was a gift is insufficient evidence to rebut the presumption. "A presumption of law cannot be said to be rebutted where the [credible] evidence . . . for and against the presumption is equally balanced. The rebutter has not carried the burden imposed upon him by law. Where the evidence for and against the presumption are equal the presumption will prevail." *Rowe v. Rowe*, 144 Va. 816, 822, 130 S.E. 771, 772 (1925). To the extent the husband's partnership interest was received in exchange for consideration which he provided, whether monetary or otherwise, it cannot be defined as a gift, *see generally* 38 C.J.S. *Gifts* § 1 (1943), and does not qualify for treatment as separate property under Code § 20-107.3(A)(1)(ii).

Even if we assume that the husband's initial ownership interest in the partnership was acquired through a combination of his capital contribution of $373.45 as shown on the accounts and gift from his father, the result remains unchanged.

> . . . Code § 20-107.3 contemplates only two kinds of property—marital property and separate property, each expressly defined. Our statute does not recognize a hybrid species of property. The discrete definitions are reinforced by the statutory rule that "[a]ll property acquired . . . during the marriage . . . is presumed to be marital property," Code § 20-107.3(A)(2)(ii), and by the proviso in § 20-107.3(A)(1) that all property acquired after the marriage in exchange for separate property becomes marital property unless, during the marriage, it is "maintained as separate property."

> We construe the definitions, the presumption, and the proviso to evince legislative intent that when, as here, a spouse fails to segregate and instead, commingles, separate property with marital property, the chancellor must classify the commingled property as marital property subject to equitable distribution.

*Smoot v. Smoot*, 233 Va. 435, 441, 357 S.E.2d 728, 731 (1987). We recognize that prior to *Smoot*, which was decided after the trial of this case, the circuit courts and the litigants had no Virginia case precedents on this point. Nevertheless, the evidence

in this case fails to establish that the husband considered his interest in the partnership to be composed of discrete, segregated shares. To the contrary, the evidence suggests that all the husband's funds were commingled and considered to be an integral part of his ownership interest.

In *Smoot*, the Supreme Court of Virginia cited an Illinois case which applied the doctrine of transmutation to support the proposition that commingled marital and separate property must be classified as marital property. *Id.*; *see In re Marriage of Smith*, 86 Ill. 2d 518, 531-32, 427 N.E.2d 1239, 1245-46 (1981)(holding that separate property valued at $45,000 was transmuted to marital property when improved by $3,800 of marital property). We conclude from our reading of *Smoot* that the Supreme Court has determined that the statutory scheme of Code § 20-107.3 embraces the transmutation theory. *See Smoot*, 233 Va. at 441, 357 S.E.2d at 73. Application of the transmutation doctrine, therefore, would suffice to cause the husband's interest to be classified marital property.

Likewise, the father's initial interest in the Lambert Pharmacy partnership, when later conveyed to the husband, would not qualify as the husband's separate property because the evidence does not establish that the gift was maintained as separate property. *See* Code § 20-107.3(A)(1). There is no proof either that the gift portion of the partnership interest was segregated in any way from the interest initially owned by the husband or that the profits derived from the gift portion were not commingled with the profits derived from the husband's initial interest.

Additionally, at or about the same time in 1976 that the husband received his father's share of the partnership as a gift, the husband gave the wife a ten percent ownership interest in the partnership. The statute classifies as marital property gifts to a spouse by the other spouse during marriage. *See* Code §§ 20-107.3(A)(1); 20-107.3(A)(2). Thus, the wife's interest in the partnership is properly classified as marital property. The evidence does not reflect that her interest in the partnership was segregated to avoid commingling the funds.

The second business entity, the Hancock-Lambert Pharmacy, Inc., was a joint venture entered into by the Lambert Pharmacy partnership and Hancock. The record does not support the

trial court's finding that the husband's interest in Hancock-Lambert was a gift from his father. The husband received twenty-five percent of Hancock-Lambert's stock, as did his father, through the use of funds generated by the Lambert Pharmacy partnership. The record does not reflect whether the services that the husband provided to Hancock-Lambert in the form of advice to the new pharmacist concerning the ongoing operation of the retail business was additional consideration for his acquired interest. In addition, the husband's stock in Hancock-Lambert was acquired during the parties' marriage and, therefore, is presumptively marital property. Code § 20-107.3(A)(2)(ii). The evidence does not reflect how the husband's stock was titled, but it does show that his interest was acquired by the use of funds generated by the partnership. If his interest in the partnership was marital property, the corporate stock purchased through the use of marital property is marital property. *See* Code § 20-107.3(A)(2). The third business entity is Dominion-Lambert Enterprises, Inc., a corporation solely owned by the husband. Although the date of incorporation was not established, Dominion-Lambert was apparently formed during the marriage because initially its only asset was the building purchased by the Lambert Pharmacy partnership. Because the husband acquired his interest in Dominion-Lambert during the marriage, his interest in the corporation is presumed to be marital property. There is no evidence that the husband's stock in Dominion-Lambert was acquired in exchange for separate property. *See* Code § 20-107.3(A)(1)(iii). There also is no evidence to rebut the presumption of marital property. Additionally, we note that the corporate entity, Dominion-Lambert, had marital property as its only initial asset. The gifts and other funds subsequently transferred to Dominion-Lambert by the husband or his father when commingled with marital property become marital property. *See Smoot*, 233 Va. at 441, 357 S.E.2d at 731.

Even if the amount of marital property that is commingled with separate property is insubstantial, if it is nevertheless significant to the marital relationship, that contribution is sufficient to trigger the presumption that the separate property has been transmuted to marital property. "[T]he possibility of the ultimate property division being inequitable is far less where commingled property is presumed marital rather than [separate], since the pool of marital property available for division is greater." *In re Marriage of Smith*, 86 Ill. 2d at 531, 427 N.E.2d at 1245. Finding that

separate property has been transmuted into marital property by commingling need not work an inequity to the party who brought the separate property to the marriage because, when making a monetary award under our statute, the trial judge must consider among other factors, the contribution of each party in acquiring, preserving, and maintaining property.

## III.

■ Because we remand this case to the circuit court for reconsideration of the evidence, we address a related question, raised by the wife, whether appreciation in value of separate property acquired during the marriage is marital property or transmutes separate property to marital property when it occurs due to the active efforts of the parties during the marriage. *See Phillips v. Phillips*, 73 N.C. App. 68, 71-75, 326 S.E.2d 57, 59-61 (1985); *Wade v. Wade*, 72 N.C. App. 372, 378-80, 325 S.E.2d 260, 267-69 (1985); *In Re Marriage of Smith*, 86 Ill. 2d at 531, 427 N.E.2d at 1245. This is a question of first impression in Virginia. Code § 20-107.3(A)(1)(iii) states, without exception, that "[i]ncome received from, and the increase in value of, separate property during the marriage is separate property." Because of this statutory language and our Supreme Court's adoption of a unitary concept of property and disavowal of the source of funds doctrine, *see Smoot*, 233 Va. at 441, 357 S.E.2d at 730-31, we conclude that property cannot consist of a portion that is separate and a portion that is through appreciation deemed marital. *Cf. Lawing v. Lawing*, 81 N.C. App. 159, 344 S.E.2d 100 (1986); *McLeod v. McLeod*, 74 N.C. App. 144, 148, 327 S.E.2d 910, 913, *cert. denied*, 314 N.C. 331, 333 S.E.2d 488 (1985).

■ Our Supreme Court's adoption of both the unitary concept of property and the concept of transmuting separate property to marital property by commingling, *Smoot*, 233 Va. at 441, 357 S.E.2d at 731, may necessarily suggest, however, that the statutory admonition of Code § 20-107.3(A)(1)(iii) that "[i]ncome received from, and the increase in value of separate property during the marriage is separate property" may not apply to all circumstances. Unquestionably, the statute applies to appreciation in value caused by economic factors. However, our belief that *Smoot* embraces the doctrine of transmutation leads us to conclude that the statute may not bar the transmutation of separate property to

marital property when there is an appreciation in value of the separate property due to the efforts of either or both of the parties during the marriage. *See In Re Marriage of Smith*, 86 Ill. 2d at 531, 427 N.E.2d at 1245 ("economic appreciation alone" is insufficient to change the character of separate property to marital property; however, the affirmative efforts of the parties may suffice); *but see*, James H. Feldman & Charles J. Fleck, *Taming Transmutation: A Guide to Illinois' New Rules on Property Classification and Division upon Dissolution of Marriage*, 72 Ill. B.J. 336, 338 (1984) (Illinois statute as amended now provides that the "increase in value of [separate] property, however achieved is classified as [separate] property, subject to the right to reimbursement").

In its memorandum opinion the trial court stated:

Income received from, and the increase in value of, separate property during the marriage is separate property. Some states such as New York provide that the appreciation of separate property is separate property except to the extent that such appreciation is due to the contribution of the spouse. The absence of such a provision in the Virginia statute suggests a contrary intent.

For the reasons which we have stated, the *Smoot* decision, decided subsequent to the trial court's opinion, casts doubt on the validity of the trial court's conclusion that all income and increase in value of separate property during the marriage, however generated, is separate property. This issue, therefore, should be reconsidered upon remand in light of principles consistent with *Smoot* and this opinion.

## IV.

The previous decisions of this Court unambiguously answer the next question presented—whether the circuit court erred in ordering the conveyance of jointly owned property.

The court's order to transfer title in the jointly owned properties is not authorized by Code § 20-107.3. Under the statute's mandate the court must first identify the marital

property and determine its value. Upon consideration of the [statutory] factors . . . the court may grant a monetary award to one party. Jointly owned marital property may be partitioned. Code § 20-107.3(C). Once a monetary award has been made, the party against whom it was made may satisfy the award by *conveyance* of property with the court's approval. Code § 20-107.3(D).

*Venable v. Venable*, 2 Va. App. 178, 185, 342 S.E.2d 646, 650-51 (1986); *see also Brinkley v. Brinkley*, 5 Va. App. 132, 137, 361 S.E.2d 139, 141 (1987); *Morris v. Morris*, 3 Va. App. 303, 309, 349 S.E.2d 661, 664-65 (1986). Consequently, the court erred in ordering the conveyance of marital property but did not err in refusing to order the conveyance of the Florida property.

V.

Lastly, the wife contends that the trial court's decree was erroneous because it provides for an unequal and excessive distribution of the marital property. Although the decree must be reversed upon the grounds set forth in the preceding discussion, this question may arise on remand and we therefore briefly address it.

█ In Virginia, there is no presumption that the amount of the monetary award must be premised upon an equal division of the marital property. *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986). "Instead, the applicable statute requires the trial court to determine the amount of the award and the method of its payment after considering [the] eleven specific factors." *Id.; see also Rexrode v. Rexrode*, 1 Va. App. at 394-95, 339 S.E.2d at 550. Once it has been determined that a monetary award is appropriate, the trial judge must determine the amount of the monetary award after considering the factors mandated by Code § 20-107.3(E). Therefore, proof that the monetary award does not reflect an equal division of marital property is not alone sufficient to reverse the award, provided the trial judge considered all the factors enumerated in Code § 20-107.3(E) in determining the amount.

Accordingly, for the reasons set forth above, we reverse and remand to the trial court all of the provisions of the decree concerning equitable distribution for reconsideration of the evidence and for further proceedings not inconsistent with this opinion, leaving

undisturbed the portion of the decree that dissolved the marriage.

*Reversed and remanded.*

Koontz, C.J., and Coleman, J., concurred.