COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges O'Brien, Fulton and Callins
Argued at Richmond, Virginia


WOODROW JACKSON, SR.

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1526-22-2                      JUDGE JUNIUS P. FULTON, III
                                                    DECEMBER 19, 2023
COMMONWEALTH OF VIRGINIA, DEPARTMENT
 OF CONSERVATION AND RECREATION


                FROM THE CIRCUIT COURT OF PRINCE EDWARD COUNTY
                          Daniel T. Balfour, Judge Designate

                Carlos A. Hutcherson for appellant.

                Terrence L. Graves (Jeffrey H. Geiger; Theodore LaRose, IV; Sands
                Anderson, PC, on brief), for appellee.


        This case involves a dispute between two landowners of adjacent parcels of land about

whether an easement exists across one of the parcels.  Appellant, Woodrow Jackson, Sr., filed a

complaint for declaratory judgment in the Circuit Court of Prince Edward County (the "trial

court"), seeking declaration of an easement and his rights related to the use of a roadway located

on certain real property owned by appellee, Commonwealth of Virginia, Department of

Conservation and Recreation (the "Department").[1]  The Department demurred, and the trial

court, after two hearings, ultimately granted the Department's demurrer and dismissed Jackson's

complaint with prejudice.[2]  Jackson appeals, arguing that he alleged facts sufficient to state a

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Jackson also filed an additional claim alleging possession of the disputed property by
adverse possession.  That issue is not before us.

[2] The trial court held the first of these hearings on May 26, 2022, wherein the court
sustained the Department's demurrer.  On June 8, 2022, Jackson filed a motion to reconsider,

claim for easement by necessity across the Department's real property. For the following reasons, we agree with Jackson. We therefore reverse, and remand for further proceedings consistent with this opinion.

## BACKGROUND[3]

On January 30, 1899, R.P. Meadows and his wife sold Charlie Walker a piece of property (the "original property"), which deed was recorded in the Clerk's Office of the Circuit Court of Prince Edward County in Deed Book 44, Page 544. On August 22, 1912, Walker and his wife Maggie deeded a portion of the property to Norfolk and Western Railway Company, which deed was recorded in the Clerk's Office of the Circuit Court of Prince Edward County in Deed Book 59, Page 143. A survey of the conveyed property was attached to that deed. Walker retained the portion of the original property for himself (the "Walker property"). On March 7, 1934, a survey was recorded in Deed Book 87, Page 261, in the Clerk's Office of the Circuit Court of Prince Edward County. That survey depicts the Walker property with a twenty foot "Roadway" running the length of the property for a length of "16 chains." Jackson argues that without this "Roadway," the Walker property would be landlocked.

On April 5, 2001, Jackson purchased the Walker property "with SPECIAL WARRANTY OF TITLE., . . . ALL THAT CERTAIN tract or parcel of land . . . containing 26.92 acres, and shown on survey of W.A. Moses, Surveyor, dated March 7, 1934, and recorded in the Clerk's Office of the Circuit Court of Prince Edward County, Virginia, in Deed Book 87, at [P]age 261."

---

which the court agreed to hear. The trial court heard argument on that motion on August 4, 2022. The trial court upheld its prior ruling to sustain the Department's demurrer, and subsequently entered a final order on September 12, 2022, memorializing that ruling, denying the motion to reconsider, and dismissing Jackson's claim with prejudice.

[3] "For purposes of evaluating a demurrer, a court assumes that all material facts, implied facts[,] and reasonable inferences from those facts that are properly alleged in the complaint are true." *Desetti v. Chester*, 290 Va. 50, 53 (2015) (alteration in original) (quoting *Brown v. Jacobs*, 289 Va. 209, 212 n.2 (2015)).

The deed for the April 5, 2001 sale was recorded in the Clerk's Office of the Circuit Court of Prince Edward County, in Deed Book 0354, Pages 240-41. The April 5, 2001 deed noted that the property being conveyed was the "identical property conveyed to Charlie Walker . . . by deed January 30, 1899" and recorded in Deed Book 44, Page 544.

In a deed dated November 14, 2006, the Department acquired the above-referenced divided portion of the Walker property (the "Department property") from Norfolk Southern Railway Company[4] by a quitclaim deed of donation, "subject to any conditions, restrictions, reservations, licenses or easements, whether or not of record." The parcels owned by Jackson and the Department are contiguous, and were previously owned by the same individual, Charles Walker. Further, Jackson's complaint alleges that upon dividing and selling the parcel now owned by the Department, the remainder of the original property became "landlocked." Jackson alleges that the roadway in question, depicted on the 1934 survey, is the only means by which he can access his property. Further, he alleges that he "has live stock [sic] on his property and often needs to deliver larges [sic] bales of hay and other items byway [sic] of his only means of ingress or egress, the roadway in question."

In his complaint for declaratory judgment, Jackson asserted two theories to support his claim that an easement along the roadway existed: easement by estoppel, and easement by necessity. In a simultaneous action, Jackson also asserted a claim of adverse possession of the roadway at issue. The trial court held a hearing on the Department's demurrer on May 26, 2022. During that hearing, the trial court questioned both parties about whether the Department's status as the Commonwealth affected the adverse possession and easement claims advanced by Jackson. Citing to *Green v. Pennington*, 105 Va. 801 (1906), counsel for the Department argued that "you cannot claim adverse

---

[4] Norfolk Southern Railway Company is the successor in interest to Norfolk and Western Railway Company.

possession against the [Commonwealth] or any interest the [Commonwealth] may have in the property." The Department also argued, in the alternative, that res judicata barred Jackson's claims because the Department had already prevailed in an ejectment action in the Circuit Court of Prince Edward County against Jackson in 2006. Finally, the Department argued that there was no basis for declaratory relief because Jackson's complaint did not allege facts that gave rise to a legal controversy. Specifically, the Department argued that, because the Circuit Court of Prince Edward County had already decided Jackson had no legal interest in the property, the "declaratory judgment act can't create rights that Mr. Jackson does not possess."

In response, Jackson argued that any arguments pertaining to res judicata were irrelevant to the Department's demurrer, as res judicata is an affirmative defense, and a demurrer tests only the sufficiency of the pleadings themselves. Further, Jackson argued that the prior ejectment action referenced by the Department was not "related to the easement issue" because that prior 2006 judgment "addresse[d] the property lines . . . . It [didn't] address whether there's an easement running with the land within those property lines." Turning to the easement, Jackson's counsel argued that an implied easement was created "when [Walker] gave [the property] to the railway." He argued that "when he did that, . . . he had to have access to his property, and that's where the easement came in. And it's documented on the maps that there's a roadway there, and that's—that was Mr. Walker's access to his property, so that's always been there." Finally, Jackson argued that he met the requirements for declaratory relief because he had a justiciable interest in the case. Specifically, there exists an actual controversy as to whether an easement exists, and the Department is interfering with his right to use the easement.

The trial court sustained the demurrer, stating "it looks like to me, the [Commonwealth] has the right to say you cannot make any claim of any sort, whether it's this easement or adverse possession claim." The trial court also explicitly declined to rule on the portion of the Department's

- 4 -

demurrer raising the issue of res judicata. The court stated: "I've made a ruling on the demurrer and that overtakes—overrides any other motions pending as well." Subsequently, the trial court took up Jackson's motion to reconsider, denied that motion,[5] and entered a final order memorializing the rulings it had made from the bench during the initial May 26, 2022 hearing. This appeal followed.

ANALYSIS

On appeal, Jackson challenges the trial court's ruling pertaining to whether an easement by necessity exists.[6] He argues that Walker's division and partial sale of the original property created an implied easement by necessity and that the Department's status as an arm of the Commonwealth does not affect the rights Jackson has to use this easement.

"A trial court's decision sustaining a demurrer presents a question of law which we review de novo. Furthermore, like the trial court, we are confined to those facts that are expressly alleged, impliedly alleged, and which can be inferred from the facts alleged." *Francis v. Nat'l Accrediting Comm'n of Career Arts & Scis., Inc.*, 293 Va. 167, 171 (2017) (quoting *Harris v. Kreutzer*, 271 Va. 188, 196 (2006)). "The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [complaint], but only may determine whether the factual allegations of the [complaint] are sufficient to state a cause of action." *Id.* (alterations in original) (quoting *Harris*, 271 Va. at 195). Thus, "[a] demurrer is properly sustained when the pleading to which it is directed fails to allege facts sufficient to state a cause of action." *Id.* (citing *Brown v. Jacobs*, 289 Va. 209, 215-19 (2015)). A demurrer also does not admit the correctness of a petitioner's conclusions of law. *Ward's Equip., Inc. v. New Holland N. America, Inc.*, 254 Va. 379, 382 (1997). "To survive a

---

[5] At the hearing on the motion to reconsider, the trial court reiterated the same view it expressed during the original hearing, stating: "[I]n my ruling and in my view of the law, an easement is almost tantamount to adverse possession. It is a claim against the state. It's just not a claim for a clear title, as adverse possession would be, but it's still a claim against the state."

[6] Though Jackson advanced theories of *both* easement by necessity and easement by estoppel below, he has abandoned any argument related to easement by estoppel on appeal.

challenge by demurrer, a pleading must be made with 'sufficient definiteness to enable the court to find the existence of a legal basis for its judgment.'" *Eagle Harbor, L.L.C. v. Isle of Wight Cnty.*, 271 Va. 603, 611 (2006) (quoting *Moore v. Jefferson Hosp., Inc.*, 208 Va. 438, 440 (1967)).

The facts set forth in Jackson's complaint, and all reasonable inferences contained therein, are sufficient to state a legal cause of action for an easement by necessity. "Easements are not ownership interests in the servient tract but 'the privilege to use the land of another in a particular manner and for a particular purpose.'" *Russakoff v. Scruggs*, 241 Va. 135, 138 (1991) (quoting *Brown v. Haley*, 233 Va. 210, 216 (1987)). "Easements are appurtenant to, and run with, the dominant tract if they benefit the owner in his use and enjoyment of that tract." *Id.* (citing *Scott v. Moore*, 98 Va. 668, 675 (1900)). "There are a number of ways an easement can be created. 'Easements may be created by express grant or reservation, by implication, by estoppel or by prescription.'" *Id.* (quoting *Bunn v. Offutt*, 216 Va. 681, 684 (1976)). "In the case of easements over streets and roads, we have recognized the creation of an easement by reference in the deed to a plat showing the road, even if the street or road had not been created or was not being used at the time of conveyance." *Id.* (citing *Walters v. Smith*, 186 Va. 159, 169-70 (1947)). "Within the category of easements created by implication, we have recognized easements created by necessity." *Id.* (citing *Middleton v. Johnston*, 221 Va. 797, 802 (1981)).

Easements by necessity are "based upon the idea that whenever one conveys property, he conveys that which is necessary for the beneficial use of the land and retains that which is necessary for the beneficial use of the property he still possesses." *Middleton*, 221 Va. at 802 (*citing Fones v. Fagan*, 214 Va. 87, 90 (1973)). To establish an easement by necessity, "a claimant must demonstrate that the severance of a parcel of land previously under common ownership created the need for access to a public right of way from one of the new parcels. Reasonable need for the easement must be shown by clear and convincing evidence." *Davis v. Henning*, 250 Va. 271, 276

- 6 -

(1995) (citing *Am. Small Bus. Inv. Co. v. Frenzel*, 238 Va. 453, 456 (1989)).  Further, the claimant must show that "the necessity for the right of way . . . continues to exist."  *Rhoton v. Rollins*, 186 Va. 352, 362-63 (1947).  A "right of way thus acquired remains vested in the grantee and his successors in title so long as the necessity therefor continues to exist."  *Id.* at 363 (quoting *Smith v. Virginia Iron, Coal & Coke Co.*, 143 Va. 159, 164 (1925)).  "The 'necessity' as applied to implied grants of rights of way is not a physical or an absolute necessity but a reasonable and practicable necessity."  *Smith*, 143 Va. at 164.

Here, Jackson's complaint alleged that two parcels at issue originated from a common owner, Charles Walker.  Further, the complaint alleges that, upon conveying a portion of the original property to Norfolk Southern Railway Company, the remainder of the Walker property was left "'landlocked' so that there was no access to city streets . . . , thus leaving [Jackson's] property cut off from access to a road to the outer world."  Jackson also asserts in the complaint that "his only means of ingress or egress [is] the roadway in question."  The complaint clarifies that "the exact route of such easement is the same route that was used when the property was initially divided by the Walkers."  The "route" referenced by the complaint is the "'Roadway' on the 1934 survey."  Finally, Jackson alleges in his complaint that he "has live stock [sic] on his property and often needs to deliver larges [sic] bales of hay and other items byway [sic] of his only means of ingress or egress, the roadway in question."

These assertions are sufficient to survive the Department's demurrer.  Jackson has pleaded the necessary elements to satisfy a claim for easement by necessity.  First, he alleges that "the dominant and servient estates belonged to the same person."  *Hurd v. Watkins*, 238 Va. 643, 653 (1989) (citing *Middleton*, 221 Va. at 802).  Second, he has alleged that the severance in 1912 "resulted in the need for access," *see Davis*, 250 Va. at 276, at the time of the severance, as Walker would have had no way to access the "landlocked" portion of the original property he retained for

- 7 -

himself, save for the roadway that Jackson alleges was in existence at the time of the severance. Finally, Jackson alleges that the alleged easement is "reasonably necessary to the enjoyment" of his property and that there is a "*lack* of other means of ingress and egress" to his property. *See Hurd*, 238 Va. at 653-54.

The Department makes *four* arguments in response to Jackson's appeal: (1) at the time of the severance, there is no indication or allegation that any easement was recorded; (2) at the time of the severance, there is no indication or allegation that any easement would be strictly necessary for the benefit of Jackson's property; (3) the easement has not remained a "continuing necessity" since the initial severance; and (4) Jackson's claims are precluded by the doctrine of res judicata.

The Department's first contention is unavailing. By their very nature, implied easements are not *recorded*, they are *implied* in law. An easement by necessity therefore need not be recorded, and in fact, would never be recorded, or it would be an *express* easement.

The Department's second and third contentions are factual disagreements which cannot justify dismissing Jackson's case at the demurrer stage. The Department argues specifically that none of the documents attached to the pleadings by Jackson indicate that the roadway served as the way of access at the time of the severance in 1912. The Department argues that the 1934 survey depicting the roadway cannot, as a matter of law, prove the existence of an easement which is alleged to have been created 22 years before the survey was created. This argument is essentially the same as that made in the Department's first contention, merely adorned in different clothing, as it argues because no document formally recognized the alleged easement in 1912, the time of severance, it must not have existed at that point in time. We disagree.

A reasonable fact finder could view the 1934 survey as *evidence* that the implied easement existed. The fact that the survey was created 22 years after the severance of the original property does not foreclose the possibility that an easement by necessity was created. In fact, one reasonable

inference would be that the later survey could be viewed as proof of the existence of the easement alleged. Whether the survey—and other potential evidence that Jackson may proffer—is enough to convince a fact finder of his position is ultimately a question of fact, not of law, which should properly be decided at trial, not by demurrer. *See Francis*, 293 Va. at 171 ("The trial court is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a [complaint], but only may determine whether the factual allegations of the [complaint] are sufficient to state a cause of action." (alterations in original) (quoting *Harris*, 271 Va. at 195)).

Finally, we decline to affirm the trial court's ruling based on the Department's arguments regarding res judicata, as those issues are not properly before this Court. The Department cites to Rule 1:6, which states:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final judgment, is forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence, whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit, and regardless of the legal elements or the evidence upon which any claims in the prior proceeding depended, or the particular remedies sought. A claim for relief pursuant to this rule includes those set forth in a complaint, counterclaim, cross-claim or third-party pleading.

Rule 1:6(a). The Department argued below, and again on appeal, that the prior default judgment entered in favor of the Department bars Jackson's present easement claim, based on the language contained in Rule 1:6.

"Res judicata involves both claim and issue preclusion." *D'Ambrosio v. Wolf*, 295 Va. 48, 53 (2018) (citing *Funny Guy, LLC v. Lecego, LLC*, 293 Va. 135, 142 (2017)). "Both of these preclusive effects, while distinguishable, require the party asserting res judicata as a defense to show by a preponderance of the evidence that the claim or issue should be precluded by a prior judgment." *Id.* (citing *Bates v. Devers*, 214 Va. 667, 671-72 (1974)). "In the Commonwealth,

claim preclusion is encompassed by Rule 1:6." *Id.* "Under this rule, 'a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.""" *Id.* at 54 (quoting *Lee v. Spoden*, 290 Va. 235, 245 (2015)). "Thus, parties may not 'relitigat[e] . . . the same cause of action, or any part thereof which *could* have been litigated' in the previous action." *Id.* (alterations in original) (quoting *Bates,* 214 Va. at 670).

Here, the Department did not file a plea in bar raising the issue of res judicata; instead, the Department only filed a demurrer, which asks only "whether the factual allegations of the [complaint] are sufficient to state a cause of action." *Francis*, 293 Va. at 171 (alteration in original) (quoting *Harris*, 271 Va. at 195). Res judicata is an affirmative defense, which is properly placed in issue via a plea in bar. *See Cal. Condo. Ass'n v. Peterson*, 301 Va. 14, 20 (2022). "A plea in bar serves a unique function in our adversarial system. In one sense, it is wholly unlike a demurrer, which merely tests the legal sufficiency of the allegations in a complaint." *Id.* (internal quotation marks omitted) (quoting *Our Lady of Peace, Inc. v. Morgan*, 297 Va. 832, 847 n.4 (2019)). "Under modern practice, a plea in bar does not point out the legal insufficiency of allegations but rather demonstrates their irrelevance because of some other dispositive point—usually some affirmative defense such as the 'statute of limitations, res judicata, collateral estoppel by judgment, accord and satisfaction, or statute of frauds.'" *Id.* (quoting *Our Lady of Peace, Inc.*, 297 Va. at 847 n.4).

Here, the issue of res judicata was not fully and sufficiently developed at trial so that we may dispose of the case on that ground. First, we note that the trial court expressly declined to rule on the issue of res judicata. Second, we note that the Department did not file a plea in bar, but only a demurrer, not properly placing the defense of res judicata in issue. We therefore decline the Department's invitation to dispose of the case on res judicata grounds.

CONCLUSION

For the foregoing reasons, the trial court's judgment is reversed.

*Reversed and remanded.*